first argued case, which is Manuel Hernandez v. Garland. And I believe you folks are with us from Berkeley Law, right? And we thank Judah Lankin for being the supervisor, right? Thank you very much. Please give our regards to your dean, who's a good friend of our circuit. So, I guess we're going to start with Camille, is that correct? Please, please proceed. Good morning, your honors, and may it please the court. My name is Camille Weiss, a law Today, I'm joined by my co-counsel, supervising attorney Judah Lankin, and fellow law student Chelsea Muir. I aim to reserve three minutes for rebuttal, which will be delivered by Ms. Muir. Very well. So, you'll cover 12 minutes, and then she'll handle the rebuttal. Very well. Please proceed. Thank you. The C-6 bar prevents a non-citizen from obtaining cancellation of removal if they are a non-citizen whose removal has previously been canceled. Prior to this case, Mr. Hernandez was never in removal proceedings, never found removable from the United States, and never obtained cancellation of removal. Nonetheless, when he applied for LPR cancellation for the first and only time below, the agency determined that the C-6 bar applied to him. That decision was erroneous for two reasons, but first and foremost, because Mr. Hernandez has never had a removal canceled. Did he have lawful status at the time he obtained his first, the NACARA LPR status? Prior to that time, he did not have lawful status. Is that correct? Your Honor, it's somewhat unclear from the record what our client's status was prior to obtaining it. What basis would he have had for lawful status at that point? At the time, the record indicates that he was a member of the ABC settlement, and he may have had some status through that. Although, I will note that my client's status prior to obtaining NACARA Section 203B is beside the point in this case. Well, humor me, because it seems to me, I understand the textual argument. We'll go through that. But to begin with, I don't really understand the logic as to why somebody who did not appear to have any lawful status was given relief and then years later shows up and acts like the fact that he was given relief before didn't happen. It did happen. And so he's asking for what amounts, to my view, is a second bite at the apple, albeit a different kind of bite, and the different kind may make a difference. But is there a logical reason why he should be given a third chance? Two points in response to that, Your Honor. First, when my client had his status adjusted under NACARA Section 203B, he was obtaining an immigration benefit. Prior to that case, he had never been in removal proceedings. He was not in a defensive posture and was not- Well, he was here unlawfully, so that seems to be a defensive posture. He just hadn't been caught and removal proceedings hadn't been initiated. Yes, Your Honor. Although, he did present himself to the agency and he did ask for lawful status by applying for NACARA Section 203B adjustment of status. Did he ask before entering the country? No, Your Honor. Oh, he had entered the country. He did not have lawful status. At that point, he sought to take advantage, as he properly could have, under NACARA for lawful status, and he got it. But before that time, he did not have lawful status. Yes, Your Honor. At that time, he obtained an immigration benefit adjustment of status. But our focus in this case is whether Mr. Hernandez obtained cancellation of removal. Well, that's your focus, and I understand that. And we'll certainly be dealing with that. But in the big picture, he did get a benefit, which you've described as a benefit already, and I'm not sure why he should get a benefit again simply because it's a different labeled benefit. Your Honor, it has to do with the plain text of the C6 bar. The C6 bar applies- Oh, so it is textual, and I want to make sure I'm not missing something. In the big picture, he doesn't have a real logical reason for getting another shot. He's hoping to take advantage of the way that the regulation is worded. Yes, Your Honor. He does have a logical argument for obtaining cancellation here. His grant of an affirmative benefit of adjustment of status is not a bite at the apple within the meaning of the C6 bar. With respect to the C6- Well, that's more textual than logical, but I'll let you go ahead and give the argument anyway. Thank you, Your Honor. Your Honor, the plain text of the C6 bar plainly applies to a non-citizen whose removal has previously been canceled. Therefore, to determine whether the bar applies to Mr. Hernandez, we need to look for the presence of one thing. Well, with respect, I'm sure you're aware of the Sixth Circuit's case in which this is Ceddini, I think, versus Holder, which held to the contrary. They basically said that if you've been granted the relief you're talking about here under NACARA, it applies across the board. What did the Sixth Circuit get wrong? Your Honor, the Sixth Circuit opinion in Ceddini versus Holder is actually factually distinct from this case. In what meaningful way? The Petitioner in Ceddini versus Holder obtained NACARA Section 203B cancellation defensively in removal proceedings. Our client did not. Our client obtained NACARA Section 203B adjustment affirmatively before U.S.CIS. And that distinction is salient for the purposes of the C6 bar- Why? Because the C6 bar only applies to a non-citizen whose removal has previously been canceled. And our client did not have a removal canceled because he was not in removal proceedings when he obtained his NACARA Section 203B benefit. So you're suggesting that, as my colleague points out, you're suggesting that because your client got the benefit while he was here illegally, as opposed to somebody who was here illegally, that he gets the better deal? Is that right? No, Your Honor. I'm suggesting that because my client got his benefit affirmatively outside the context of removal proceedings, he's not a non-citizen whose removal has previously been canceled. And, therefore, the bar cannot apply to him. What do you make of this Court's decision in Aragon-Salazar versus Holder, wherein this Court said Section 203 of NACARA established rules to permit certain classes of aliens to apply for relief from removal, under what is titled Special Rule for Cancellation of Removal. That's what we said it was, relief from removal. Are you making a distinction between cancellation and relief from removal? No, Your Honor. I'm jogging my memory to the facts of that case. But if I recall correctly, the petitioner in that case was, again, in this defensive proceeding before obtaining relief under NACARA Section 203B. Our client is different from all of those petitioners in those cases because he obtained his NACARA Section 203B benefit affirmatively before the agency. There was no removal proceeding. There was no need for relief in his case because he was not in a removal proceeding. But doesn't NACARA say, listen, things are bad where you're from. Nobody's going to get removed. So you're here. We're going to give you a change of status, and we're going to cancel any kind of removal proceedings. Isn't that the promise of NACARA? I'm sorry, Your Honor. I don't quite understand your question. So it's not just we're going to adjust your status, but you aren't going to be removed. Those are two things that NACARA achieved, correct? Absolutely, Your Honor. NACARA does provide for two distinct forms of immigration remedies, cancellation of removal and adjustment of status. Those two are not tethered together. And our client only received one. He only received the affirmative adjustment piece from Legacy INS. He was never in a defensive posture and did not need any relief from removal or a cancellation of removal because he was never before an IJ. He was not in removal proceedings. He obtained his green card and his status to stay here affirmatively before USCIS. Do you have any case law that, if you will, buttresses what you are saying? And we understand you're trying to distinguish the Sixth Circuit case, the case that my colleague just referred to, and so on. But is there any case law that says that you're correct? Correct with respect to the way you construe the statute and its interplay with NACARA. The statute being the C-6 bond? DNA. Your Honor, as far as we're aware, this is the first time that a circuit court has sort of confronted the specific interplay between C-6 and NACARA Section 203B. However, on particular sort of subpoints to our argument, we have plenty of case law to support sort of our supporting arguments. But, in effect, you're saying we want you to make new law to buttress our position, basically, to agree with this? Yes, Your Honor. As far as we're aware, a petitioner in our client's posture, this is the first time that a circuit court will be weighing in on that issue. In my limited time remaining, I would, again, like to circle back to the key statutory language, which is at issue here, which is that the plain text of the bar only applies to a non-citizen whose removal has previously been canceled. Cancellation of removal necessarily entails many things. First and foremost, the non-citizen must be in removal proceedings before an immigration judge. The immigration judge must find that the non-citizen is removable from the United States, and then the non-citizen can apply to have their removal canceled. None of those things happened in Mr. Hernandez's case. As I said before, he applied for the benefit that he received affirmatively before an agency. He was never found removable. There was no removal to be canceled in his case. But he was subject to removal, and he had no discernible lawful status that would have fended off removal at that point, did he? Your Honor, can you clarify what you mean by subject to removal? Well, he did not have lawful status. If there had been an immigration court proceeding, it's not hard to realize that he would have been found subject to removal. He could have at that point sought cancellation. All that's really different here is that an NTA had not been served upon him to commence a proceeding. I'm not sure that makes as much difference as you're telling it should. Why should it make so much difference? Your Honor, there is a difference between not having status and being subject to a removal proceeding. Well, there's lots of differences, but there are differences sometimes that don't distinguish. And I'm not sure I understand why this difference should distinguish his case from, for example, the Sixth Circuit case. Your Honor, the distinction matters in this case, again, because of the plain language of the bar. The plain language of the bar directs our attention to cancellation of removal. We need to be focused on whether Mr. Hernandez obtained cancellation of removal, and he simply did not. He was not subject to a notice to appear. He was not in removal proceedings, and he never was found removable from the United States. There was plainly never a removal to be canceled in his case, and he did not obtain cancellation of removal. Unless the Court has any further questions, I'd like to reserve my remaining time. Very well. So your colleague will come up at the time of rebuttal, right? Yes, Your Honor. Very well. Thank you very much. Thank you. Very well. We'll hear from the government by video. This is Ms. Murcia, right? Yes, Your Honor. Please proceed. May it please the Court, Lisa Murcia of the Office of Immigration Litigation, for the respondent. The only issue before the Court today is whether the agency properly pre-permitted Mr. Hernandez's application for cancellation of removal, where he was previously granted special rule cancellation of removal per the terms of Section 203B of NACARA and 8 U.S.C. 1229B.C. 6. First of all, there can be no doubt, as the Sixth Circuit found, that special rule cancellation of removal is included under 1229B.C. 6. Section 203B of NACARA specifically states that the grant of special rule cancellation of removal is under 240A, which is 1229B. And the statute in question, 1229B.C. 6, specifically states whose removal has previously been canceled under this section. So, first of all, there can be no doubt that special rule cancellation of removal under the plain language of both 203B of NACARA and the cancellation statute 1229B.C. 6 are connected and are overlapping. Counsel, let me ask you this. One of the issues we have to deal with with the government on this is the effect of the BIA's earlier decision. Was that decision published or unpublished? The decision in this case? Yes. It was unpublished. No, no, no. The one that they relied upon. They cited the BIA opinion. I believe they, I'm sorry, I will, just to, their decision specifically, I believe the decision that it stated, that it cited. I think there may be a subsequent decision, confusing, because I think it's also called. I mean, I'm, I'm a little bit unsure what you, I'm sorry, Your Honor. Aguity. You were saying? Well, I guess what. This. Trying to identify which BIA decision it was, but my recollection was that the BIA relied upon an earlier decision. And my question was, on this issue, and my question was whether it was published or unpublished. Because that makes a difference in terms of whether, if it's ambiguous, we give it Chevron deference or we merely give it Skidmore deference. Do you know what I'm talking about now? Yes. Yes. Sorry, Your Honor. In this particular case, just looking at the board decision here, and I, I'm sorry, Your Honor. I hesitate for a moment just because I didn't recall that the, the board had cited any particular board decision in this case. And looking back, looking at the decision itself, I don't, I don't see a board decision here either. I think that the, the board here just relied on its own reasoning in the unpublished decision. However, notwithstanding that, in, as we noted in our brief, even though that the board's decision here is unpublished, after this case, there was a published decision, matter of Hernandez-Romero. To the extent that we argue in our briefs and petitioners argues as well that this is a plain statutory interpretation, this court would be able to make a decision on this case without necessarily remanding. However, if it decides that the statutes are ambiguous, the government would ask that this court hold for the case of matter of Hernandez-Romero, which is before the Ninth Circuit right now and in the middle of briefing. As I understand it, our Hernandez-Romero case was decided in 2019. You're saying it went back and now it's coming back again. Is that correct? Is that what you're saying? Hernandez-Romero was previously before the Ninth Circuit and the Ninth Circuit remanded it to the board. On remand, matter of Hernandez, maybe it would clarify matter of Hernandez-Romero is not this case. No. Just to start with. I think what we're really talking about here is, is the statute ambiguous? That's really the issue. No. It's not. And your best authority for that is what? Well, we would rely, of course, on the Sixth Circuit's decisions, the genie, and the board's decision on matter of Hernandez-Romero that interpret the plain language of the statute. Indeed, the board's 2021 decision on remand in Hernandez-Romero tries to thread the needle because it says, well, we agree with the Sixth Circuit, and the Sixth Circuit said it was ambiguous, so we're offering our interpretation. But between the lines, as I read that, it seems to be saying, but the board doesn't really think the statute is ambiguous. So if the Sixth Circuit wants to think so, okay, but here's our interpretation of it. And you're offering that up to us in either form. If we agree with the Sixth Circuit that the statute's ambiguous, we should follow, you argue, Hernandez-Romero under Chevron. But you also urge us to agree with the board's implicit determination in Hernandez-Romero that it's not ambiguous. That's just what the words of the statute say. Do I have that correct? Your Honors, with a caveat, I would say that's essentially correct. With the caveat that in this particular case, as Your Honors pointed out, this case preceded matter of Hernandez-Romero. So the only thing that we have here is a decision that essentially decided on the plain language, that decided that the petitioner wasn't eligible for cancellation of removal. And now we're asking the court to make a decision on the plain language of the statute, essentially stating that the agency was correct here. If the court decides it's ambiguous, the question of ambiguity isn't before the court simply because the board decision here, it didn't cite matter of Hernandez-Romero, which, as Your Honor acknowledged, did thread the needle. It both decided whether it was plain language or ambiguous. It would come to the same conclusion. Didn't the Sixth Circuit decide that it wasn't ambiguous? I mean, in Cegini, they said special rule cancellation under NICARA is the same as cancellation under 8 U.S.C. section 1229B. This is the plain reading of section 203 of NICARA. And that is the government's — I'm sorry. No, she's right. I misspoke. When I said Sixth Circuit, I meant this circuit. It was our decision that remanded the case to the board that said it was ambiguous. I think that's an unpublished decision, so it's not precedent for us, but we've helped muddy the waters ourselves. Yes, Your Honor, I'm sorry. As we noted in our brief, this court did state that the statute here was ambiguous. But as it was an unpublished decision, it's not precedent. And while it can be persuasive, when it came back to the board, and certainly that's the government's position here, that the plain language of NICARA and the cancellation of removal statute supports the reading that special rule cancellation of removal, if previously granted, would enact the far under 1229B C6. And if you had to articulate — let's argue and let's say that we were right when we sent this back to the BIA, that the statute is ambiguous. So we apply Skidmore deference, which is basically if we're convinced by the logic, that's okay. So if you had to state the reason why the statute, if it's ambiguous, why we should still apply your reading, how would you articulate that? What's the logic? Assuming it's ambiguous, what's the logic? Assuming it's the logic, it would be very similar to the argument that we present in our briefs. Just based on the plain text, there's similarity between the language and 1229B C6. Under this section is the exact same language that you see in NICARA section 203B, which is that the attorney general may, under 240A of such act, cancel the removal of, and so on and so forth. So it's the same language, as well as we noted in our brief, in terms of how the statutory context of 203B and special rule cancellation of removal, the subsections, there were certain subsections there that were specifically stated to not apply to special rule cancellation of removal. C6 was not one of them. And on top of that, we cited some of the background, the statutory background and the regulatory background, which provides extraordinarily clearly that the only reason that special rule cancellation of removal sort of had this bifurcated path was that the sheer numbers that the attorney general was facing and the attorney general placed, was designated the consideration of special rule cancellation of removal in certain circumstances to the asylum officers at the time. There's no functional difference between the special rule cancellation of removal and cancellation of removal that would indicate a contrary reading to how the board read it in this particular case. The board, I'm looking at the language here, the board said, after referring to 203A-2 of the NICARAS, said this provision was explicitly made subject to the provisions of section 1229B with certain exceptions that are inapplicable here. Is that the logic we should follow from the government's perspective? Yes, that is certainly when in our argument, in our argument in our briefs, we stated that the court could follow both the plain language, that the statutory context, and that simply reading it harmoniously and in a common sense manner, that if Congress had wanted for the prohibition of C-6 not to apply to special rule cancellation of removal, it would have stated it there, and it didn't. Could you engage with the petitioner's core argument, which is that what happened the first time couldn't be properly deemed cancellation of removal because there was never a removal proceeding initiated, there was never an NTA served. What's wrong with that argument? Your Honor, as we point out in our brief, the petitioner's argument is not supported by the statute to start with. Special rule cancellation of removal, and I don't think that this was particularly highlighted in our brief, but just reading the language of the statute itself under 203b, it specifically says that the Attorney General may cancel removal of an adjusted status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable. In special rule cancellation of removal itself, it acknowledges that who this statute applies to is a person who is inadmissible and deportable, and that they are canceling the removal of this person and adjusting status. So in the statutory language itself, there's no support for the petitioner's argument. But beyond that... We used to get a lot of cancellation of removal cases of the classic kind, where someone argues that a qualifying relative is going to suffer exceptional hardship and so forth. We don't get as many of those cases anymore, but that's what I came to understand was covered by cancellation of removal. If the agency would grant discretion someplace along the way and decide not to initiate removal proceedings, that wouldn't be called cancellation of removal, as I understand it. That might be an exercise of discretion and so forth. Why is it we should take cancellation of removal, which ordinarily refers to relief given in the context of a removal proceeding, for somebody who is found to be removable but going to cut some slack for some reason, customarily the exceptional hardship? What makes this cancellation of removal? I mean, the petitioner has argued that, yes, it says cancellation of removal and adjustment of status, but in this case, petitioner got adjustment of status, did not get cancellation of removal in the classic sense. And so they have to argue that and means and or, but the argument is there, and I understand the logic behind that argument. Why should we treat this person as having received cancellation of removal when there wasn't any prior removal proceeding the first time around? Well, Your Honor, there are two points to make towards that. I think that the petitioner is sort of playing with both the legal argument that 1220, that special rule cancellation of removal had to be under removal proceedings, and there's no evidence of that in the statute. There's no evidence that special rule cancellation of removal had to be granted or special rule cancellation of removal and adjustment of status had to be considered before an immigration judge. The only mechanism for the petitioner to have special rule cancellation of removal and adjustment of status, those two things had to go together here because we had no lawful status previously, or it was essentially that here he had to apply for that, and there was a, he could either apply before the service or apply before the immigration judge. But nothing said that there had to be a removal finding or removal proceedings before the immigration judge to be granted cancellation of removal. As we point out in our brief, the regulations actually discuss this in detail. The idea of where this jurisdictional question came from. There was an overwhelming amount of applications, and the attorney general to deal with these overwhelming amount of applications created a process in which they could go to the service or they could go to the immigration judge. But the petitioner's distinction between affirmative and defensive proceedings has no distinction here. As we point out, the regulations under which he would have had to apply. I'm sorry, I'm over time. Okay, we've let you go over a little time. Let me just ask my colleagues whether either has additional questions for the government. I think not, so we thank you. So, counsel, on rebuttal, if you want to come forward at this time. Let's give her an extra minute. We gave the government a little extra time, so let's give her four minutes, okay? I had to appear on crutches one time. I feel your pain. Are you comfortable standing? Would you feel better sitting? I'm comfortable standing. Okay. Yes. Thank you. So you've heard what's been said. What can you tell us the government got wrong, or we got wrong, from your perspective? I'll try. Good morning, Your Honors. May it please the Court. My name is Chelsea Muir on behalf of Petitioner Manuel Hernandez. A few points on rebuttal. First, when we look to the C6 bar in Section 1229B, we see that there are actually two questions at play. Whether Announces and previously had their removal canceled, and whether their removal was canceled under that section. The government, in its briefing and in its oral argument today, has collapsed these two questions. But if the Court decides to resolve the case on that first question, we don't need to do the statutory analysis of whether NACARA is, in fact, under Section 1229B. I guess, to me, that's the most difficult issue is the BIA seems to take the position that 1229B is NACARA and that are part and parcel of the same statute. You can't just have subparts of it and that when it refers to cancellation of removal, it is indeed involves the entire statute, not just the NACARA section. What is your best argument that the BIA got that wrong? Really, our strongest argument here is that the BIA, well, there's a factual distinction between our client and the client discussed in the BIA decision. And I understand that there's a factual distinction in that setting, but in terms of statutory construction, the BIA says, look, you've got this big law, includes cancellation of removal. Part of it is NACARA. It's part and parcel of it. It kind of got spliced in, as my colleague has pointed out. But when it talks about cancellation, it's cancellation qua cancellation. There's really no difference. And I know you're making a factual distinction, as has my colleague, about the fact that this guy wasn't subject to removal when he first got the benefit. He hadn't even been served an NTA. And I know you're making that distinction. But for purposes of construing the statute in terms of whether he gets a second bite at the apple, what's your best argument that this NACARA section is not just part of the big picture, 1229B, and you get no relief? Your Honor, there are three forms of cancellation of removal substantively under Section 1229B, colloquially known as non-LPR cancellation, LPR cancellation, and VAWA cancellation. But NACARA, Congress chose not to amend Section 1229B to include NACARA as a form of cancellation under that section. Well, it did title the section Special Rule for Cancellation of Removal. So it's not like Congress said, this is a different creature. It used the same phrase. Yes, Your Honor. But the title of that benefit is not necessarily dispositive of the benefit that it requires. It might be dispositive, but why isn't it persuasive? Why shouldn't it suggest to me that this is what is intended by the phrase cancellation of removal? It is intended to include relief under that Special Rule. It's not persuasive because when we look to the text of 1229B, which here is the operative statute that we need to look at, we see that cancellation of removal is clearly defined there as a defensive form of relief that's only available in removal proceedings before an immigration judge. You can see that in Congress. It just says an alien whose removal has previously been canceled under this section. I don't know that I understand the, I mean, I think it's a creative argument, but I don't know that I understand the statute screams out offensive, defensive are different creatures, and I haven't seen any case authority that draws a distinction like that. Why should I break it down that way? When we look to the statute, we can see that announces and must be inadmissible or deportable to apply for cancellation of removal. When we look to the proceeding section of the INA, we see that only in removal proceedings can announces and be found inadmissible or deportable. We see that only immigration judges can make those determinations. So we see a cancellation of removal by its nature must be a defensive form of relief, but that's not how Mr. Hernandez applied for NACARA. He applied through an affirmative process through INS promulgated by regulations that were enacted. We've run out of time here, but let me ask my colleagues whether either has additional questions. So that's one of the problems of argument before an appellate panel. There's a clock, and unfortunately the clock runs down. We ensure that you would have lots more to say, but we thank you for your argument in both cases. Thank the law school and counsel supervising for participating. This is really important that people have due process and be represented by able counsel. And I can tell you that some of the lawyers who have been practicing for a while are not nearly as good as you two, so you can take some comfort in that, and we hope you'll come back and see us again. The case just argued of Hernandez v. Garland is submitted.
judges: CLIFTON, SMITH, Reiss